# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ERNESTO RAY LOYA,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-20-922-C** |
| ) | |
| **RICK WHITTEN, Warden,**[1] ) | |
| ) | |
| **Respondent.** ) | |

## REPORT AND RECOMMENDATION

Petitioner Ernesto Ray Loya, initially proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1.[2] United States District Judge Robin J. Cauthron referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondent filed a response, Doc. 14, and the state record, which includes the jury-trial transcripts (TR.), the jury-trial exhibits (State's Ex. or Court's Ex.),

---

[1] Petitioner lists as Respondent Warden Jimmy Martin. Doc. 1, at 1. Petitioner is housed at the North Fork Correctional Facility. *Id.* Because Rick Witten is the current acting warden of Joseph Harp Correctional Center, *see* https://oklahoma.gov/doc/facilities/state-institutions/north-fork-correctional-center.html#admin (last visited May 27, 2021), he has custody of Petitioner and is substituted as Respondent. *See* Rule 2(a), Rules Governing 2254 Cases in the United States District Courts.

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the state court records will refer to the original pagination. Additionally, quotations from the Petition are verbatim, but the undersigned has altered some capitalization for ease of reading.

and the original record for Alfalfa County Case Nos. CF-2014-65 (OR I) and CF-2016-24 (OR II). Doc. 16. Petitioner, through counsel, filed a reply brief. Doc. 19. For the reasons set forth below, the undersigned recommends the court deny habeas corpus relief.

## I.    The facts underlying Petitioner's convictions.

In 2014, Petitioner's son, G.L., repeatedly called 911 from his residence. TR. 178-79. Although the child was "quiet" and did not disclose his reason for making the calls to the investigating officer at the time, he later revealed his father had sexually abused him on multiple occasions when he was ten years old. *Id.* at 183, 191.

G.L. testified that the first occurrence of sexual abuse took place at his home in Cherokee, Oklahoma. *Id.* at 191-92. Petitioner "got off the couch and he started dragging [G.L.] up the stairs." *Id.* at 194. Petitioner threw G.L. on the bed in Petitioner's bedroom, tied him to the bed, and put a blindfold over his eyes. *Id.* at 195. Although G.L. tried, he was not strong enough to get Petitioner off of him. *Id.* G.L. stated that Petitioner "put[] his penis in [G.L.'s] butt." *Id.* G.L. also read into the record a statement recorded by his counselor addressing this incident, in which G.L. further stated he was scared and worried when his father dragged him up the stairs, G.L. was screaming, and

Petitioner stuck a sex toy "on his butt" and another on his penis.[3] *Id.* at 208-11; State's Ex. 4.

G.L. also testified Petitioner sexually abused him in a camper outside their residence. TR. 200. On that occasion, while G.L. and Petitioner did homework, Petitioner "crawled over the table and started having sex with [G.L.]" by "putting his penis in [G.L.'s] butt." *Id.* at 201-02. G.L. also read a statement into the record that additionally accused Petitioner of putting his penis inside G.L.'s mouth. *Id.* at 214-17; State's Ex. 6.

G.L. testified about a third occurrence of sexual abuse at the feed lot where his father worked. TR. 198, 204. Petitioner "took off his clothes in the break room and he came in and he shoved [G.L.] over the table and shoved his penis in [G.L.'s] mouth and in [G.L.'s] butt." *Id.* at 204. Petitioner then made G.L. stick his penis in Petitioner's mouth and "butt." *Id.* at 204-05. G.L. also read a statement into the record about the incident, explaining that he was "angry, upset, and confused," that he believed Petitioner snuck drugs into work, that Petitioner's breath smelled like crack and cocaine, and that Petitioner used a sex toy on him. *Id.* at 211-14; State's Ex. 5.

G.L. also testified that Petitioner showed him pornography on Petitioner's phone while at Petitioner's workplace that depicted "two men

---

[3]     G.L. testified that Petitioner did not put anything else inside him. TR. 196.

having sex" and "a man putting his penis in [a] girl[']s mouth and in her butt." TR. 197-98.

The police searched Petitioner's residence and found a phone, computer, multiple explicit adult magazines, a "blue robe tie," and a "pink sex toy." *Id.* at 246-47. And the police found nine sexually explicit magazines in the camper and one-hundred-six sexually explicit magazines in a white Ford Ranger. *Id.* at 249-50. Former Chief Andrew Minson testified two such magazines were entitled "Family Fun" and "Family Stuff," which described family members having sexual encounters. *Id.* at 251, 253-55; State's. Exs. 11, 12.

Steve Tanio, an investigator with the District Attorney's Council, conducted a forensic interview of G.L. TR. 309. Mr. Tanio testified that the blue robe tie in Petitioner's house was consistent with what G.L. said Petitioner had used during the sexual assault in Petitioner's bedroom. *Id.* at 313, 315; State's Ex. 10. Mr. Tanio also testified about three still images from videos found on Petitioner's computer, which—although not necessarily shown to G.L.— corroborated information he obtained from his interview with G.L. TR. 321, 328-30; State's Exs. 16-18.

Petitioner was charged with child sexual abuse and lewd molestation in Alfalfa County Case No. CF-2014-65 and forcible sodomy and first-degree rape in Alfalfa County Case No. CF-2016-24. OR I 56; OR II 38. The state court tried the cases together, and a jury convicted Petitioner of all counts. TR. 472-73.

The trial court sentenced Petitioner to twenty years' imprisonment for child sexual abuse, five years' imprisonment for lewd molestation, and ten years' imprisonment for rape—all to be served consecutively. OR I 111; OR II 70. The trial court also sentenced Petitioner to ten years' imprisonment for forcible sodomy, to be served concurrently with his rape sentence. OR II 70.

## II. Petitioner's claims.

Petitioner raises eleven grounds for relief:

Ground One: Hearsay testimony was improperly admitted because the trial court failed to abide by the standards set out in law.

Ground Two: The trial court erred in failing to require the prosecution to "elect between acts."

Ground Three: Because G.L.'s testimony was not "clear and convincing," it required corroboration. And, because the testimony was not adequately corroborated, this Court should find the evidence is insufficient to support [Petitioner's] convictions.

Ground Four: [Petitioner] was denied a fundamentally fair trial by the admission of prejudicial and cumulative evidence, as well as improper bolstering.

Ground Five: Admission of other bad acts evidence prejudiced the jury, deprived [Petitioner] of his fundamental right to a fair trial, and warrants reversal of the sentences.

Ground Six: The introduction of the contents of Donald Rains's forensic report violated [Petitioner's] right to confront witnesses under the Sixth Amendment of the United States Constitution.

Ground Seven: The trial court committed reversible error in its response to jury questions regarding the elements of the alleged crimes.

Ground Eight: [Petitioner] was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground Nine: The cumulative effect of all the errors addressed previously herein deprived Petitioner of a fair trial.

Ground Ten: [Petitioner] is factually innocent of all crimes of which he is accused through the insufficiency of any physical evidence in this case.

Ground Eleven: [Petitioner] was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Doc. 1, at 4-8. Petitioner made the same challenges—along with others—in his direct appeal and application for post-conviction relief from the state court. *Id.* at 2, 8-9. The OCCA affirmed the trial court's judgments and sentences, Doc. 14, Ex. 8, at 1, 24, and the denial of Petitioner's application for post-conviction relief. *Id.* Ex. 9.

## III.   Standard of review for habeas relief.

"The standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') guide [this Court's] review of 28 U.S.C. § 2254 applications." *Wellmon v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1245 (10th Cir. 2020). A petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of petitioner's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable

determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Petitioner bears the "burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011).

This Court first determines "whether the petitioner's claim is based on clearly established federal law." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). Clearly established federal law consists of Supreme Court holdings in cases with facts similar to those in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be

applied; the state court decision must be diametrically different and mutually opposed to the Supreme Court decision itself." *Id.* (internal quotation marks and citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (quoting *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. (2006), internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was objectively unreasonable." *Id.* (citations omitted). So, to qualify for habeas relief on this prong, Petitioner must show "there was no reasonable basis for the state court's determination." *Id.* at 1243 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* (quoting *Harrington*, 562 U.S. at 101); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining [federal habeas relief], a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## IV. Although Petitioner's state-law claims provide no direct basis for federal habeas relief, the Court will review claims under a due process framework.

As for the state court's factual determinations, this Court must "accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 576 U.S. 257, 271 (2015) (quoting 28 U.S.C. § 2254(d)(2)). This Court presumes the factual determination to be correct—a petitioner can only rebut this presumption with clear and convincing evidence. *See id.*; *see also* 28 U.S.C. § 2254(e)(1). Although Petitioner's state-law claims provide no direct basis for federal habeas relief, the Court will review claims under a due process framework.

Respondent argues many of Petitioner's grounds for relief are based on alleged violations of Oklahoma law. Doc. 14, *passim*.[4] This Court agrees. Violations of Oklahoma law do not entitle Petitioner to federal habeas relief. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)."); *see also Estelle v. McGuire*, 502

---

[4]    Respondent makes this allegation with respect to Ground One (hearsay testimony), Ground Two (prosecution's failure to "elect between acts"), Ground Three (lack of corroboration for G.L.'s testimony), Ground Four (prejudicial and cumulative evidence), Ground Five (admission of evidence of other bad acts), and Ground Seven (trial court's response to jury questions).

U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). The undersigned thus recommends the Court deny any claim to the extent it is solely based on the violation of Oklahoma's statutes or constitution.

This Court liberally construes the Petition,[5] but it will not supply Petitioner with an argument. *See, e.g.*, *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[B]ecause [appellant] appears *pro se*, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate."). When a state court error is "'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), regarding state-law evidentiary errors); *see also Patton v. Mullin,* 425 F.3d 788, 807 (10th Cir. 2005) (noting

---

[5]     Although Petitioner did not have counsel when he filed the Petition. Counsel entered an appearance on his behalf contemporaneous with his reply brief. Doc. 20. Thus, the Court does not liberally construe Petitioner's reply brief. *See, e.g.*, *Gonzales v. Martin*, No. CIV-18-297-R, 2018 WL 4494993, at *1 (W.D. Okla. Sept. 19, 2018) ("Because Petitioner is represented by counsel, he is not entitled to liberal construction of his claims, and the Court will limit its construction to the arguments actually developed by the briefs.").

that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.") (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir.1997)). So, this Court's concern is not whether the trial court admitted evidence in violation of Oklahoma law, but whether the evidence rendered Petitioner's trial fundamentally unfair. *See, e.g., Ochoa*, 669 F.3d at 1144 (holding that the court decides whether evidence renders a trial fundamentally unfair "without regard to whether the evidence was properly admitted pursuant to state law" (citing *Estelle*, 502 U.S. at 67-68)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Thus, even if the OCCA does not explicitly address a fundamental fairness argument, the argument was before the court, and so it is still entitled to AEDPA deference.

Because Petitioner has failed to explain some other basis for the OCCA's decision, he has not overcome the presumption that the OCCA adjudicated the fundamental fairness claim. *Hanson*, 797 F.3d at 847-48. The Court thus applies AEDPA deference to the OCCA's decision related to Petitioner's multiple due process arguments. *See Harrington*, 562 U.S. at 98 ("Where a

state court's decision is unaccompanied by an explanation, the habeas petitioner's burden [under § 2254(d)] still must be met by showing there was no reasonable basis for the state court to deny relief.").[6]

## V. Ground One: Petitioner contends the trial court improperly admitted G.L.'s statement as hearsay evidence.

In Ground One, Petitioner contends G.L.'s out-of-court statements—read into the record and admitted as evidence—amounted to hearsay and were improperly admitted.[7] Doc. 1, at 4; State's Exs. 4-6. The undersigned reviews this claim under the Due Process Clause for fundamental fairness.[8]

---

[6] Alternative to his argument that Petitioner failed to raise a federal claim, Respondent contends Petitioner exhausted no federal aspect of his claims in Grounds One, Four, Five, and Seven. *See* Doc. 14, at 15-17, 40-42, 47-48, 60-61. The Court may deny a habeas petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because Petitioner's arguments can be denied on the merits, the undersigned does not reach Respondent's exhaustion arguments.

[7] Petitioner appears to argue in his reply brief that Ground One also contains an allegation that the trial court violated the Confrontation Clause. Doc. 19, at 5. The Court agrees with Respondent that neither the Petition nor Petitioner's direct appeal brief raised a Confrontation Clause argument advancing this claim. Doc. 14, at 15 n.3. Petitioner may not raise a claim for the first time in a reply brief. *See Eaton v. Pacheco*, 931 F.3d 1009, 1025 n.15 (10th Cir. 2019) ("[The Petitioner] attempts to make a new-claim argument for the first time in his reply brief. But arguments advanced for the first time in a reply brief are waived."), *cert. denied*, 140 S. Ct. 2771 (2020). Accordingly, the Court will not consider this argument.

[8] Petitioner's claim is otherwise based on state law and is not cognizable in federal habeas review. *See Hamburger v. Allbaugh*, 679 F. App'x 665, 667 (10th Cir. 2017) ("To the extent that this argument is based on an alleged

### A.   The OCCA's ruling.

In his direct appeal, Petitioner noted that Okla. Stat. tit. 12, § 2803.1 provides a hearsay exception for the admission of statements made by a child under the age of thirteen only when the trial court holds a reliability hearing and the adverse party provides ten days' notice of their intent to offer the statement. Doc. 14, Ex. 5, at 14-16. He argued that because the trial court held no reliability hearing regarding the statements and the State failed to provide adequate notice, the trial court should not have permitted the State to introduce the evidence. *Id.* Ex. 5, at 16-21.

Because Petitioner failed to object at trial, the OCCA reviewed the claim for plain error. *Id.* Ex. 8, at 4. The OCCA noted that it "will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." *Id.* at 4-5. The OCCA held:

> The State concedes that omission of the notice and hearing constituted error but argues that these errors were harmless since the statements bore sufficient indicia of reliability and, thus, were properly admissible. We agree. The record on appeal affirmatively establishes that Appellant had constructive notice of the State's intention to introduce the challenged evidence at trial. Had the trial court heard the same evidence *in-camera*, there is no doubt that the judge would have found the child hearsay statements were admissible. Although the child's repetition of the statements was

---

violation of Okla. Stat. tit. 12, § 2803.1, which requires a finding of reliability of child victim statements prior to admission, such a claim is not cognizable under § 2254.").

not perfect in any sense, his overarching explanation of the sexual assaults remained consistent throughout his many statements. Based upon the record, the errors associated with omission of notice and hearing in the present case did not have a substantial influence on the outcome of the trial and were harmless. Proposition One is denied.

*Id.* at 5 (citations omitted).

**B.    The OCCA reasonably found that the trial court's failure to hold a reliability hearing prior to admitting G.L.'s out-of-court statements did not deny Petitioner a fair trial.**

This Court should deny Petitioner's due process claim on the merits. The OCCA applied a "plain error" standard and determined the trial court's error— failing to hold a reliability hearing—was harmless. *Id.* at 4. "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). So, when the OCCA "rejected [Petitioner's] claim under the plain-error standard, the decision effectively disallowed the possibility of a due process violation." *Id.* This Court must then defer to the OCCA's ruling unless it "'unreasonably applied'" the plain-error test. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (where the OCCA considers plain error, "we must defer to its ruling unless it unreasonably appli[ed] that test" (internal quotation omitted)); *see also Harris v. Sharp*, 941 F.3d 962, 999 (10th Cir. 2019) ("We treat the OCCA's decision under the plain-error standard as an

14

adjudication on the merits. We thus review this decision under 28 U.S.C. § 2254(d)." (internal citation omitted)), *cert. denied*, 141 S. Ct. 124 (2020).

Applying AEDPA deference, the Court finds the OCCA reasonably decided that the trial court's lack of compliance with Okla. Stat. tit. 12, § 2803.1 did not render the trial fundamentally unfair. The evidence was not a surprise to Petitioner, as the state included "[r]ecollections written by G.L." on an exhibit list filed eleven days before trial.[9] OR I 71. The admitted statements and G.L.'s testimony, while differing in the level of detail, were largely consistent. *Compare* TR. 194, 195, 201-02, 204-05 *with* State's Exs. 4, 5, 6. It was therefore not unreasonable for the OCCA to rule the trial court's error did not deprive Petitioner of a fundamentally fair trial.

In his reply brief, Petitioner argues the Court must determine whether the OCCA followed *Chapman v. California*, 386 U.S. 18 (1967). Doc. 19, at 6. In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. Because the OCCA held any error to be harmless, it did not have to apply *Chapman. See Morrison v. Pettigrew*, 2020 WL 2104936, at *5 (N.D. Okla. May 1, 2020) ("[T]here was

---

9       Okla. Stat. tit. 12, § 2803.1(B) prohibits the admission of a covered statement "unless the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings."

no reason for the OCCA to apply *Chapman* because the error the OCCA found

was a state-law error, not a constitutional error."). Petitioner's argument lacks

merit.

For the reasons stated above, Ground One should be denied.

**VI.    Ground Two: Petitioner alleges error regarding the trial court's
failure to require the prosecution to elect between the separate
acts of abuse.**

Petitioner contends the trial court erred when it did not require the

prosecution "to elect between acts." Doc. 1, at 4. For the reasons below, the

Court should deny this claim.

### A.    The OCCA denied Petitioner's claim on plain-error review.

The OCCA, applying plain error, held:

> In Proposition Two, Appellant contends that the trial court
> erred when it failed to force the State to elect which acts it would
> rely upon to support the charged offenses. He argues that the child
> was not under his exclusive domination . . . .

> Reviewing the record, we find that Appellant has not shown
> the existence of an actual error. The child testified that Appellant
> committed numerous acts of rape, forcible sodomy, lewd
> molestation, and child sexual abuse against him when he was ten
> years old. The State chose to charge Appellant with only one count
> of each of these offenses and did not definitively elect which of the
> acts supported the separate counts. Since the child was of tender
> years and under the exclusive domination of Appellant, his father,
> during the sexual assaults, we find that the State was not required
> to elect which acts it would rely upon to support the charged
> offenses. Proposition Two is denied.

Doc. 14, Ex. 8, at 6-7 (citations omitted).

**B.     The OCCA reasonably determined Petitioner received a fundamentally fair trial.**

To the extent this Court liberally construes Petitioner's argument to raise a due process claim, the OCCA reasonably determined Petitioner received a fundamentally fair trial. *See Thornburg*, 422 F.3d at 1125 (where the OCCA considers plain error, "we must defer to its ruling unless it unreasonably appli[ed] that test" (internal quotation omitted)). Finding that G.L. was of tender years and under the exclusive domination of Petitioner during the sexual assaults, the OCCA held the trial court did not err in not requiring the State to elect which acts it was relying upon to support the charged offenses. Doc. 14, Ex. 8, at 6. The OCCA based its conclusion on Oklahoma law, which does not require election between or among acts in child abuse and child sex abuse crimes. *See Huddleston v. State*, 695 P.2d 8, 10-11 (Okla. Crim. App. 1985) ("[W]hen a child of tender years is under the exclusive domination of one parent for a definite and certain period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction within the meaning of th[e] [election] rule."); *see also Gilson v. State*, 8 P.3d 883, 900 (Okla. Crim. App. 2000) ("[U]nder the principles enunciated in *Huddleston,* the abuse suffered by the children was a continuous act and the State was not required to elect one specific act upon which to

prosecute, nor was the jury required to agree on one specific incident of abuse to support a finding of child abuse."). The OCCA's decision was reasonable.

## VII.  Ground Three: Petitioner contends there was insufficient evidence to convict him because the State did not corroborate G.L.'s testimony.

Petitioner argues in his third challenge that there was insufficient evidence to support his conviction because the State failed to corroborate the child victim's testimony. Doc. 1, at 4.

### A.    The OCCA's decision.

The OCCA rejected Petitioner's claim:

> In Proposition Three, Appellant challenges the sufficiency of the evidence supporting his conviction. This Court follows the standard for the determination of the sufficiency of the evidence which the United States Supreme Court set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). Under this test, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." A reviewing court must accept all reasons, inferences, and credibility choices that tend to support the verdict.

> Appellant does not challenge the State's proof of the essential elements in this proposition. Instead, he complains that the child's account was inconsistent and his testimony was contradictory. He argues that the evidence was insufficient because the child's testimony was not corroborated.

> Reviewing the record in the present case, we find that the child's testimony did not require corroboration. As the child's account was neither incredible nor so unsubstantial as to make it unworthy of belief but, instead, was lucid, clear, and unambiguous we find that the child's testimony could properly support the jury's

verdict without corroboration. Taking the evidence in the present case in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. Proposition Three is denied.

Doc. 14, Ex. 8, at 7-8 (citations omitted).

### B.     The lack of corroboration of G.L.'s testimony did not render the trial unfair.

Petitioner first asserts that because G.L.'s testimony was not "clear and convincing," it required corroboration. Doc. 1, at 4. To the extent Petitioner intended to bring this as an independent claim,[10] it is a state-law challenge. *See Yingling v. Workman*, 206 F. App'x 738, 740 (10th Cir. 2006) (noting that Oklahoma "law provides that a victim's testimony usually need not be corroborated to sustain a rape conviction"); *Stillwagon v. Martin*, No. CIV-19-352-R, 2020 WL 6731134, at *6 (W.D. Okla. Apr. 20, 2020) ("Petitioner fails to identify any federal constitutional requirement that the minor victims' testimony required corroboration. Rather, Petitioner's claim that corroboration of the victims' testimony was required is based exclusively on state law and, as

---

[10]     In his reply, Petitioner contends Respondent "engages in an incorrect analysis arguing the Petitioner only presented a state-law claim" because both Respondent and the OCCA addressed *Jackson*. Doc. 19, at 7-8. Petitioner raises a federal claim when he challenges the sufficiency of the evidence, which Respondent does not dispute. Doc. 14, at 32-38. The undersigned liberally construes the Petition to include an independent challenge to the trial court's failure to require corroboration of G.L.'s testimony. And although the challenge is based on state law, the Court analyzes the claim under a fundamental fairness framework.

such, fails to state a cognizable habeas claim."), *adopted*, 2020 WL 5642007 (W.D. Okla. Sept. 22, 2020), *appeal filed*, No. 20-6165 (10th Cir. Oct. 26, 2020).

In his reply, Petitioner incorrectly contends that "Respondent's argument concedes that a constitutional violation occurred and thus with the testimony from G.L., it fundamentally deprived Petitioner of a fair trial." Doc. 19, at 8. Although Respondent did not concede a constitutional violation occurred in the brief, the undersigned considers whether the lack of corroboration rendered the trial fundamentally unfair.

Oklahoma law does not require corroboration in sex crimes trials such as this one. *See* Doc. 14, Ex. 8, at 8 (citing *Martin v. State*, 747 P.2d 316, 318 (Okla. Crim. App. 1987)); *see also Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005) ("No direct Supreme Court precedent requires corroboration of child witness testimony."). As the OCCA reasonably determined, G.L.'s "account was neither incredible nor so unsubstantial as to make it unworthy of belief, but instead, was lucid, clear, and unambiguous." Doc. 14, Ex. 8, at 8. The undersigned therefore concludes the lack of corroboration was not so unduly prejudicial that it rendered the trial fundamentally unfair. To the extent Petitioner raises a due process claim in Ground Three, it should be denied.

**C.    The OCCA reasonably applied *Jackson* in holding sufficient evidence supported Petitioner's convictions.**

Petitioner also raises a sufficiency-of-the-evidence claim. Doc. 1, at 4; Doc. 19, at 9 (asserting in reply that "[t]he evidence presented to support [his] convictions is legally insufficient"). The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson*, 443 U.S. at 324; *see Lott v. Trammell*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing that *Jackson* provided "the clearly established law applicable to [an insufficient-evidence] claim"). So, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). *Jackson*'s standard for evidence sufficiency "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

This Court's *Jackson* review is "sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (internal quotation marks and alterations omitted); *see also Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (in reviewing the sufficiency of the

21

evidence, the federal habeas court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason'" (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993))).

The Tenth Circuit addressed a case in which a petitioner convicted of child sexual abuse argued, as here, that the child victim's testimony was "so inconsistent that, absent corroboration, it denied him due process." *Parker*, 394 F.3d at 1314. The court held:

> Under *Jackson*, to determine whether the child's testimony was sufficient to convict Parker, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. 2781. "This . . . standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

*Id*.

The OCCA reasonably applied *Jackson*.[11] G.L. testified that while his mother and brother were out, Petitioner dragged him up the stairs, threw him

---

[11]    Petitioner contends in his reply brief that "[t]he OCCA's opinion that Petitioner had not challenged the elements is objectively unreasonable because a lack of corroboration goes to the allegations/elements not being corroborated or supported by the previous accounts of the alleged child victim" and contends the "Court should not apply deference to the OCCA's resolution." Doc. 19, at 9. But the relevant inquiry for this Court is not whether the OCCA reasonably interpreted Petitioner's brief on appeal, but whether the OCCA reasonably applied clearly established federal law—the *Jackson* test applied to Ground

on the bed, and put "his penis in [G.L.'s] butt." TR. 194-95. G.L. said Petitioner blindfolded him and tied him up, and told him "that it was going to be good for you to lay down and shut up." *Id.* at 195-96. G.L. also testified that on another occasion, Petitioner "crawled over the table and started having sex with me" when he was studying in his dad's camper. *Id.* at 201-02. This evidence supports both either the first-degree-rape charge and the child-sexual-abuse charge. Okla. Stat. tit. 21, §§ 1114(A)(1), 843.5.

G.L. testified that Petitioner showed him images of "porn" from his cell phone. TR. 197-98. The executed search warrants returned over a hundred sexually explicit magazines from Petitioner's truck, camper, and master bedroom. *Id.* at 246-50, 251-57. The two from the master bedroom depicted family members having sexual encounters. *Id.* at 251-57. One of Petitioner's letters from jail acknowledged the magazine and adult movies in his home, as well as the images on his computer and cell phone. *Id.* at 371. This evidence supports the lewd molestation charge. Okla. Stat. tit. 21, § 1123(A)(5)(d).

Last, G.L. testified that in his father's workplace's break room, his father shoved him over the table and "shoved his penis in [G.L.'s] mouth and in

---

Three. Ultimately, the OCCA held that "any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt." Doc. 14, Ex. 8, at 8. Thus, the Court must determine whether that decision, when viewing the evidence in the light most favorable to the prosecution, was reasonable.

[G.L.'s] butt." TR. 204. This supports the forcible oral sodomy charge. Okla. Stat. tit. 21, § 888. G.L. also recounted that Petitioner threatened more abuse or to take G.L.'s life if he told his mother. State's Ex. 4. The OCCA did not unreasonable apply *Jackson*: "the trier of fact fairly [had] to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Parker*, 394 F.3d at 1314.

Petitioner fails to meet his burden under *Jackson*. He asks this Court to re-evaluate the credibility of the witnesses and re-weigh the evidence, which, as set forth above, is not the role of this Court on habeas review. Because the OCCA reasonably applied *Jackson*, the undersigned recommends denying habeas corpus relief on his sufficiency-of-the-evidence challenge.

## VIII. Ground Four: Petitioner asserts the trial court improperly admitted G.L.'s statements as cumulative evidence.

Petitioner argues in his fourth challenge that he did not receive a fair trial because of the admission of prejudicial cumulative evidence as well as improper bolstering. Doc. 1, at 4-5.

### A.    The OCCA's decision.

On direct appeal, Petitioner argued he was denied a fair trial as protected by the Sixth and Fourteenth Amendments of the United States Constitution and the Oklahoma Constitution because, along with G.L.'s testimony, the trial court admitted G.L.'s statements to his counselor about the abuse and attacks. Doc. 14, Ex. 5, at 29-32; State's Exs. 4, 5, 6. He argued the

admission of these statements was cumulative to G.L.'s testimony and was therefore unfairly prejudicial. Doc. 14, Ex. 5, at 31-32.

The OCCA denied Petitioner's claim:

> Reviewing the record, we find that the trial court did not abuse its discretion when it admitted the child's statements to his counselor. The child's statements held great probative value. Although certain parts of the statements repeated portions of the child's testimony, the State did not bolster its version of the facts by duplicating its case. Giving the statements their maximum reasonable probative force and minimum reasonable prejudicial value, we find that probative value of the statements was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or needless presentation of cumulative evidence. Proposition Four is denied.

*Id.* Ex. 8, at 9 (citations omitted).

## B.   The admission of G.L.'s statements did not render Petitioner's trial unfair.

The OCCA's determination was objectively reasonable.[12] As noted, a constitutional error occurs "when a state court admits evidence that is so unduly prejudicial that it renders the trial fundamentally unfair." *Ochoa*, 669 F.3d at 1144 (internal quotation omitted). Reviewing the whole record, the admission of G.L.'s statements did not cause an unfair trial. Although Petitioner argues G.L.'s statements were cumulative because of his testimony about the same events, Doc. 1, at 4-5, Respondent correctly notes that the statements contained information not addressed by G.L. in his testimony. Doc.

---

[12]   The Court presumes the OCCA addressed Petitioner's due-process claim on the merits. *See supra* § IV.

14, at 44; *see also id.* Ex. 8, at 9 (OCCA holding "the State did not bolster its version of the facts by duplicating its case"). The details contained in the statements were probative and, as the Court addressed in its analysis of Ground One, reliable.

In his reply, Petitioner contends the OCCA's decision "was objectively unreasonable as it cannot be determined that any error was harmless beyond a reasonable doubt." Doc. 19, at 10. But the OCCA did not find any error. Instead, it held the evidence was properly admissible under state law. Thus, Petitioner's harmless error argument fails. Doc. 14, Ex. 8, at 9.

Petitioner also argues that "[t]he court must consider that jurors react more strongly than judges to certain evidence" and "attach significant weight to redundant evidence." Doc. 19, at 13. Petitioner fails to cite supporting case law. And Respondent notes the trial court instructed the jury to not allow sympathy, sentiment, or prejudice into its deliberations. Doc. 14, at 45; TR. 419; *see United States v. Carnagie*, 533 F.3d 1231, 1243 (10th Cir. 2008) ("[W]e generally assume that jurors follow the judge's instructions."); *Jones v. Jones*, No. CIV-08-1236-F, 2009 WL 4730768, at *10 (W.D. Okla. Dec. 4, 2009) ("The Court must assume that the jury followed [the Court's] instructions.").

Because a "federal court must tread gingerly and exercise considerable self-restraint" in addressing a fundamental fairness claim, *Duckett v. Mullin*,

306 F.3d 982, 999 (10th Cir. 2002), the undersigned recommends Ground Four

be denied.[13]

## IX.   Ground Five: Petitioner contends the trial court improperly admitted prior "bad acts" evidence.

In Ground Five, Petitioner challenges the admission of evidence of prior

bad acts, contending this rendered his trial fundamentally unfair. Doc. 1, at 5.

Specifically, he challenges the admission of:

- The portion of State's Exhibit 5 in which G.L. described Petitioner possessing and using drugs at the workplace—specifically, having a bag of white stuff and that his breath smelled like crack and cocaine;

- The portion of State's Exhibit 7 noting that Petitioner's wife stated Petitioner had been fired from Wal-Mart for sexual harassment and that she was aware Petitioner stored pornography at the residence and viewed it on his home computer;

- Officer Andrew Minson's testimony that authorities recovered 106 sexually explicit magazines from Petitioner's residence and camper; and

- State's Exhibits 11 and 12, which were pages from two adult magazines taken from Petitioner's home.

Id. The Court should deny Petitioner's request for habeas relief on this ground.

---

[13]   In his reply, Petitioner also contends "[a] fundamental miscarriage of justice will occur unless this Court grants the writ." Doc. 19, at 11. In support, Petitioner notes a statistic on the percentage of Oklahoma exonerees who were convicted of child abuse crimes and perfunctorily notes the similarity between Petitioner's case and an Oklahoma exoneree's. Id. He also implies he is actually innocent of the crimes. Id. at 12. These arguments fail to relate to Petitioner's claims. This Court will not consider them because Petitioner raises them for the first time on reply. See Eaton, 931 F.3d at 1025 n.15.

A.      **The OCCA's decision.**

In his direct appeal, Petitioner argued the same evidence deprived him of his fundamental right to a fair trial. Doc. 14, Ex. 5, at 32-37. The OCCA rejected Petitioner's claim:

> In Proposition Five, Appellant contends that the trial court violated 12 O.S.2011, § 2404(B) when it admitted evidence of other crimes or bad acts. He argues that the pornographic magazines and books found during the search of his home and camper constituted inadmissible other bad acts. We find that the trial court did not abuse its discretion when it admitted the challenged evidence. The pornographic magazines and books did not constitute other crimes or bad acts evidence under § 2404(B). Instead, the materials were relevant evidence tending to show Appellant's commission of Lewd Molestation. As the pornographic materials were necessary to give the jury a complete understanding of the crimes, they were also part of the *res gestae* of the charged offenses.

> Appellant further argues that the evidence suggesting that Appellant was fired from Walmart for sexually harassing a coworker as well as the evidence that he possessed and used cocaine during one of the sexual assaults on the child constituted inadmissible other crimes or bad acts evidence. Since Appellant did not raise the challenge which he now raises on appeal, we find that he has waived appellate review of these claims for all but plain error. We review his claim pursuant to the test set forth above and determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his substantial rights.

> The evidence suggesting that Appellant possessed and used cocaine during one of the rapes was so closely connected to the charged offense as to form part of the entire transaction and necessary to give the jury a complete understanding of the crime. Therefore, we find that the challenged evidence was clearly part of the *res gestae* of the offense and was properly admitted into evidence. Plain error did not occur.

We reach a different conclusion as to the evidence suggesting that Appellant had been fired from Walmart after sexually harassing a coworker. The State concedes that this single sentence should have been redacted from the Affidavit for Search Warrant before the Warrant was admitted into evidence at trial but argues that this error was harmless. We agree with the State's contention. The evidence of the adverse employment circumstances did not tend to show that Appellant was guilty of the charged offenses but instead merely tended to establish a bad act for which Appellant was not on trial. However, we find that this error did not seriously affect the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. The evidence strongly supported the jury's determination of guilt and recommendation of sentences. Because this error did not have a "substantial influence" on the outcome of the trial we find that it was harmless. Proposition Five is denied.

Doc. 14, Ex. 8, at 9-12 (citations omitted).

### B. The OCCA reasonably applied federal law when it rejected Petitioner's challenges to the admission of prior bad acts.

Petitioner raised his constitutional claim—a due process claim asserting he received a fundamentally unfair trial—in his direct appeal. Doc. 14, Ex. 5, at 32-37. Because Petitioner presented his federal claim to the OCCA and the OCCA denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. The Court thus applies AEDPA deference to the OCCA's determination.

Petitioner generally contends "a failure to exclude inadmissible other crimes evidence deprives a defendant of his right to a fair trial and warrants

reversal." Doc. 19, at 15. In support, he cites a federal case for the proposition that the government must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case. *Id.* (citing *United States v. Biswell*, 700 F.2d 1310, 1317 (10th Cir. 1983)). But *Biswell* addressed a case on direct appeal from a federal conviction, not a habeas review of a state conviction. Here, the relevant inquiry is whether the OCCA reasonably determined that Petitioner was not denied a fair trial. Whether the state court made an evidentiary error is not properly before the court. *See Estelle*, 502 U.S. at 67-68. The Court addresses each of the alleged portions of "bad acts" evidence below.[14]

### 1. Evidence regarding pornographic materials in Petitioner's home.

Petitioner fails to show the OCCA unreasonably applied federal law when it held the admission of evidence about the number of pornographic materials at Petitioner's home did not render Petitioner's trial fundamentally unfair.

The State charged Petitioner with lewd acts with a child under the age of sixteen—criminal conduct which includes forcing a child to view obscene

---

[14]    In reply, Petitioner also argues that he "must show that 'the cumulative effect of the errors determined to be harmless had a []substantial and injurious effect or influence in determining the jury's verdict.'" Doc. 19, at 14 (quoting *Hanson*, 797 F.3d at 852). But Petitioner does not bring a cumulative error challenge in Ground Five. Thus, Petitioner's recitation of the law is misplaced.

materials. Okla. Stat. tit. 21, § 1123(A)(5)(d). The evidence that Petitioner possessed pornographic materials was, therefore, probative. Petitioner admitted having pornographic materials near his children was a terrible choice. TR. 371-72 (witnesses reading a letter authored by Petitioner). Petitioner notes his counsel objected at trial because "the admission of the magazines would reflect [him] to be a bad person" and the "magazines were not illegal for [him] to own and store in his home." Doc. 1, at 5. But "[e]vidence is not unfairly prejudicial simply because it is damaging to [the defendant]." *See United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (citation omitted). Given the nature of the charges Petitioner faced, the undersigned cannot find the admitted evidence deprived Petitioner of a fair trial.

### 2.    The admission of evidence about illicit drugs.

Petitioner's challenge regarding evidence of recreational drug use similarly lacks merit. The OCCA reasonably found the evidence suggesting Petitioner's possession and use of cocaine during the sexual assault "was so closely connected to the charged offense as to form part of the entire transaction" and therefore "clearly part of the *res gestae* of the offense." Doc. 14, Ex. 8, at 11. Under Oklahoma law, "[i]f a defendant's conduct is part of the *res gestae* of the charged offense, then it is not considered other crimes or bad acts evidence." *Vanderpool v. State*, 434 P.3d 318, 324 (Okla. Crim. App. 2018). "Evidence is considered part of the *res gestae* when: a) it is so closely connected

to the charged offense as to form part of the entire transaction; b) it is necessary to give the jury a complete understanding of the crime; or c) when it is central to the chain of events." *Id.*

In his statement, G.L. described Petitioner kissing him with his tongue. Then, G.L. states: "I think he snuck some drugs into work and I think he was doing drugs. I saw a bag of white stuff in his pocket . . . . His breath smelled like drugs, like crack and cocaine." State's Ex. 5. Given the close connection to the chain of events, the OCCA's conclusion that G.L.'s statements about Petitioner's drug use at or near the time of the sexual assault were part of the res gestae of the charged offense was reasonable. Petitioner has no right to habeas relief due to the admission of evidence related to illicit drugs.

### 3. Evidence about Petitioner's termination from employment.

The OCCA reasonably determined that the admission of evidence related to Petitioner's employment history, although error under state law, did not amount to a due process violation.[15] A search warrant admitted into evidence included a sentence showing Petitioner's wife stated Petitioner "had been fired from Wal-Mart for sexual harassment of a co-worker." State's Ex. 7. The

---

[15]    The OCCA reviewed the admission of the evidence about Petitioner's termination from Wal-Mart and alleged drug use under the plain error standard. Doc. 14, Ex. 8, at 10-11. "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock*, 798 F.3d at 1011.

contested evidence amounts to a single sentence in a two-page, single-spaced document. None of the witnesses testified about his wife's allegation. When viewed in light of the entire record, the sexual harassment statement was relatively minor, compared with G.L.'s direct testimony about the sexual assaults and lewd acts. It was therefore reasonable to conclude the evidence "did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings or otherwise represent[] a miscarriage of justice." Doc. 14, Ex. 8, at 12. The Court should deny Petitioner's request for habeas relief based on this evidence.

## X.   Ground Six: Petitioner contends the trial court violated his Sixth Amendment right to confront the witnesses against him.

In Ground Six, Petitioner alleges a Confrontation Clause violation. He maintains that state investigator Steve Tanio testified about photos on Petitioner's computer, rather than the author of the forensic report Donald Rains. Doc. 1, at 5-6.

### A.   The OCCA's decision.

Applying plain error, the OCCA recognized the trial court erred:

> As Tanio's conclusion that the images came from Appellant's computer was based upon the report of forensic examiner Donald Rains, we find Tanio's testimony violated Appellant's right to confrontation and conclude that plain error occurred. However, we find that Appellant has not shown that the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Appellant admitted to his wife in the letter he wrote her from the jail that he had pornographic materials on his computer, on his

cellphone, and in their home. In light of the other evidence at trial, we find that the Confrontation Clause violation was harmless beyond a reasonable doubt. Proposition Six is denied.

Doc. 14, Ex. 8, at 13-14 (citations omitted).

### B.    Clearly established law.

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403 [ ] (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford* [*v. Washington*], after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those "who 'bear testimony'" against him. 541 U.S.[36, 51 (2003)]. A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id.* at 54.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

"Harmless error analysis applies to Confrontation Clause cases." *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000). "When a federal court considers a Confrontation Clause violation in a habeas proceeding, the relevant harmless error analysis is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotations and citation omitted).

"In determining whether error was harmless in this context, [the court] consider[s] factors such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or

absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Littlejohn v. Trammell*, 704 F.3d 817, 845 (10th Cir. 2013) (applying *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (internal quotation marks omitted).

### C. The OCCA reasonably applied clearly established federal law when it determined that the Confrontation Clause violation was harmless.

Assuming without deciding that the OCCA correctly determined Mr. Tanio's testimony violated the Confrontation Clause, the undersigned concludes the trial court's error did not substantially and injuriously affect or influence the jury's verdict.

Mr. Tanio testified State's Exhibits 16, 17, and 18 were "stills from a video clip that [he] extracted off of the forensic examination by the OSBI [Oklahoma State Bureau of Investigation] of images that the child had described to me that [Petitioner] had shown the child." TR. 321. The pictures depict "sexually explicit video clips by the father of a male and a female engaging in a wide variety of sexual activity," including "an image of a male's penis in a female's rectum and an image of the male's penis in the female's mouth and an image of the male's penis in the female's vagina." *Id.* at 329. He testified the images were found on Petitioner's computer. *Id.* On voir dire, Mr. Tanio testified he obtained the pictures from the forensic examiner, Donald

Rains. *Id.* at 322. The OCCA found a Confrontation Clause violation because Mr. Rains was not present to testify.

Even so, the testimony about the images was not crucial to the prosecution's case: Mr. Tanio did not confirm with G.L. that the images from the exhibits were the images Petitioner had shown him, and Mr. Tanio did not know for sure whether G.L. was exposed to them. *Id.* at 330, 346. G.L. testified he saw pornography on Petitioner's phone, *id.* at 197, and on questioning from defense counsel, Mr. Tanio admitted the images were not from a cell phone. *Id.* at 346. The OCCA also recognized that Petitioner admitted to having various damaging photographs on various devices. Doc. 14, Ex. 8, at 14. Based on the above, the undersigned agrees that any error did not have a substantial or injurious effect on Petitioner's trial. The Court should deny habeas corpus relief on Ground Six.

## XI. Ground Seven: Petitioner alleges error related to the trial court's responses to jury questions.

In Ground Seven, Petitioner argues the trial court's responses to the jury's five questions "clearly left the jurors confused as to the elements required for convictions." Doc. 1, at 6.

### A. The OCCA's decision.

On direct appeal, Petitioner argued the trial court violated his Fourteenth Amendment right to Due Process when it failed to properly instruct the jury. Doc. 14, Ex. 5, at 43-49. Reviewing this claim for plain error, the

OCCA determined that "[s]ince the trial court's responses were consistent with the law and answered the jury's questions using clear and plain language we find that no error, plain or otherwise, occurred." *Id.* Ex. 8, at 17.

### B.      Clearly established law.

Generally, matters concerning jury instructions are considered state law questions and are proper subjects for federal habeas review only if the error is "so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Patton*, 425 F.3d at 807 (internal quotation marks omitted). The Court liberally construes Petitioner's claims to allege a denial of his due process rights and a fair trial.

The Court's determination "cannot turn on a *de novo* review of the record or a finding that the answers were the best way to answer jurors' questions." *Waddington v. Sarausad*, 555 U.S. 179, 196 n.7 (2009) (internal quotation marks omitted). To that end, "[t]he question . . . is not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (internal quotation marks and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

### C.     The OCCA reasonably applied federal law when it determined the trial court's response to five jury questions did not deny Petitioner a fair trial.

Petitioner contends error with respect to the trial court's responses to

five jury questions:

Jury:   We see 2 counts of rape filed March 10th. Specifically states 1 at the Feed Lot, and 1 on the brown couch. There is only 1 charge of rape in our instructions. How do we know which counts happened where? Is there more than 1 charge of rape? (or can we say guilty on more than 1?)[.]

Court:  Please review Instruction # 12, 13, 14, 15, & 18. In addition, you have been given the applicable law and heard all the evidence necessary for continued deliberations.

Jury:   Is there a guideline we can use on punishment based on prior criminal history, number of crimes, etc.? I.E. Typical years for each type of charge[.]

Court:  The range of punishment for each alleged crime is contained in your instructions. No additional guidelines shall be provided.

Jury:   2nd element of Child Sexual Abuse[.] If we feel there were lewd acts or lewd proposals beyond a reasonable doubt, can we convict? Concerned we have to be able to satisfy the 1st part of the element: Rape/Incest (Do the slashes mean <u>OR</u>?)[.]

Court:  The Court encourages you to use your common sense as to whether a slash means "or."

Jury:   If we convict on multiple charges, is there a potential that the sentence will be served concurrently? This could [a]ffect sentencing.

Court:  You have been given all applicable law in reference to sentencing in these cases.

Jury:   Do we have the authority to state that multiple sentences are to be served concurrently? I.E. 25 years on 2 charges to be served concurrently? We don't see anything about concurrent or stacked sentences in the instructions.

> Court:  The determination of consecutive vs. concurrent rests solely with
> the Court.

Court's Exs. 1-10. Petitioner argues "[t]he trial court's responses clearly left the jurors confused as to the elements required for convictions . . . and also gave ambiguous responses at first regarding methods of sentencing." Doc. 1, at 6. Petitioner further argues that "jurors were not brought back into the Court to clear away any confusion, and were forced to accept Exparte communications from the trial court, providing no such as OUJI on consecutive or concurrent sentencing pursuant to Title 22 O.S. §§ 926.1 & 927.1." *Id.*[16]

Petitioner has not shown either that the trial court's responses to the jury questions were erroneous or that they rendered his trial fundamentally unfair. *See Van Dusen v. Mullin*, No. CIV-06-295-M, 2006 WL 3693368, at *16 (W.D. Okla. Dec. 14, 2006) ("[T]hree factors combine here to prevent habeas relief: [1] The trial court directed the jury to rely on the instructions; [2] [the petitioner] does not challenge the correctness of the previously given instructions; and [3] the lack of further questions suggests that further clarification was unnecessary."). Although Petitioner frames the trial court's communications with the jury as ex parte, Doc. 1, at 6, the trial court

---

[16]    In his reply, Petitioner contends the trial court's error was structural, *see, e.g.*, *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017), and thus would require automatic reversal by the OCCA. Doc. 19, at 20. But the OCCA found that "no error, plain or otherwise, occurred." Doc. 14, Ex. 8, at 17. So, the OCCA did not find any ground for reversal, structural or otherwise, and it had no need for a harmless error review.

formulated responses to the jury's questions with defense counsel's input, *see* TR. 452-59, 462-71.

While Petitioner contends the court "gave ambiguous responses at first regarding methods of sentencing," Doc. 1, at 6, the trial court's response to the jury's sentencing question was appropriate and did not result in a due process violation. *See Hobbs v. Crow*, 2020 WL 59821, at *2-3 (N.D. Okla. Jan. 6, 2020) (finding "nothing shocking or unfair about the answer to the jury's note" where the jury asked whether the sentence would be consecutive or concurrent and the court responded that the jury had "all of the instructions you need"). Because the trial court's plain-error determination was reasonable, the Court should deny habeas corpus relief on Ground Seven.

## XII.  Ground Eight: Petitioner alleges ineffective assistance of trial counsel.

Petitioner challenges the effectiveness of his trial counsel in Ground Eight. He argues his trial counsel's performance was both constitutionally deficient and prejudiced his defense by failing to:

- List a witness who could lay a foundation for the admission of a psychosexual evaluation and agreeing not to introduce the report;

- Impeach G.L. on the differences between his two recorded statements to Mr. Tanio;

- Impeach Mr. Tanio with an OSBI report about DNA found on a sex toy;

- Impeach G.L. with his brother's statements that G.L. had committed forcible sodomy on him;

- Object to the lack of a reliability hearing;

- Object to instructional errors.

Doc. 1, at 6-7.

### A.    The OCCA's decision.

The OCCA considered and rejected Petitioner's allegations on direct appeal:

> In Proposition Ten, Appellant challenges the effectiveness of defense counsel. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 . . . (1984). The *Strickland* test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's performance prejudiced the defense.
>
> . . . .
>
> Appellant asserts that defense counsel was ineffective for failing to object and raise the challenges that he set forth in Proposition One. We determined in Proposition One that the trial court's failure to hold the *in-camera* hearing constituted harmless error. As such, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to raise the challenge now raised on appeal.
>
> Appellant further asserts that defense counsel was ineffective for failing to object and raise the challenges that he has set forth in Propositions Eight and Nine. We determined in those propositions that Appellant had not shown plain error within the trial court's instructions and answers to the jury. Therefore, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to raise these challenges at trial.

Appellant further asserts that counsel was ineffective for failing to use the child's recorded interviews to impeach the testimony of the child and Investigator Tanio concerning the robe tie discovered in Appellant's bedroom. We note that the recorded interviews are not within the record on appeal. The child did not testify concerning the robe tie. Defense counsel challenged Tanio's testimony concerning the tie through other means. Based upon this record, we must conclude that Appellant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and demonstrated that counsel's representation was unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Appellant further argues that counsel should have impeached Investigator Tanio with the fact that DNA samples from the sex toy discovered in Appellant's bedroom showed only female DNA on the device. He claims that defense counsel impeached Tanio on this point at preliminary hearing. The transcript from the preliminary hearing shows that Tanio did not have any knowledge about DNA testing on the sex toy. As nothing in the record establishes that DNA testing was performed and what, if any, results were obtained, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to utilize the alleged evidence.

Appellant further argues that counsel should have impeached both the child and Tanio with the statement of the child's brother accusing the child of committing forcible sodomy on him. We note that information concerning this circumstance was included in the Affidavit for Arrest Warrant. Although it appears that this evidence was available to be used at trial, we find that defense counsel's decision to not use this evidence was a reasonable strategic decision. Since use of the cited evidence could have led to additional evidence concerning the child's behavioral changes we find that Appellant has not demonstrated that counsel's representation was unreasonable under prevailing professional norms.

Appellant further asserts that counsel was ineffective for failing to introduce a copy of his Psychosexual Evaluation. The

record reveals that defense counsel listed this item as an exhibit in Appellant's Exhibit List. The State challenged the admission of the Evaluation in a motion *in limine* arguing that the exhibit would constitute hearsay because Appellant had not listed the author of the Evaluation as a witness in his Witness List. The trial court sustained the State's motion after defense counsel indicated that he did not intend to introduce the evaluation. Defense counsel did not explain on the record why he did not intend to introduce the evaluation. As the Psychosexual [E]valuation is not within the record on appeal we find Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to utilize the alleged evidence. Proposition Ten is denied.

Contemporaneous with the filing of his Brief, Appellant filed his *Application for Evidentiary Hearing on Sixth Amendment Claim*. He has attached a copy of his Psychosexual Evaluation, the child's video recorded statements to Tanio, and the video recorded statement of the child's brother. He seeks to supplement the record on appeal with these items pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017) and requests an evidentiary hearing on his claims of ineffective assistance.

Reviewing Appellant's application, affidavit, and attachments we find that Appellant has not established clear convincing evidence of a strong possibility that counsel was ineffective for failing to utilize the Evaluation as evidence at trial. Appellant has not shown a reasonable probability that the outcome of the trial would have been different absent counsel's failure to introduce the proffered evidence. Appellant's Application is DENIED.

Doc. 14, Ex. 8, at 18-22 (select citations omitted).

## B.   Clearly established law.

Under clearly established law, Petitioner must show his attorney's performance was deficient and prejudicial. *See Strickland*, 466 U.S. at 690-91.

A court will only consider an attorney's performance "deficient" if it falls "outside the wide range of professionally competent assistance," and such review "must be highly deferential." *Id.* at 689, 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of counsel claims is subject to the deference due all state court decisions in the context of federal habeas review.[17] "Surmounting *Strickland's* high bar is never an easy task." *Harrington*, 562 U.S. at 105 (internal quotation marks and citation omitted). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 101; *see also id.* at 105 ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were

---

[17]   Petitioner filed an Application for Evidentiary Hearing on Sixth Amendment claim under Rule 3.11(B) of the OCCA. Doc. 14, Ex. 11. The OCCA's denial of Petitioner's request "operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)." *Lott*, 705 F.3d at 1213.
.

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.").

### C. The OCCA reasonably applied *Strickland* when it rejected Petitioner's ineffectiveness of counsel claims.

#### 1. Counsel's alleged failures related to Petitioner's psychosexual evaluation.

Plaintiff contends his trial counsel was ineffective because he "failed to present evidence which would have helped to exculpate" him. Doc. 1, at 6. Specifically, he asserts a psychosexual evaluation showed he "had significant sexual interest for Female Adults and Females 14–17, and indicating this was normal heterosexual male interest." *Id.* Petitioner argues that although his attorney was "well aware of the report and its findings," he "failed to list and then subpoena a sponsoring witness for the report," and "agreed not to introduce the report." *Id.*

The undersigned finds the OCCA reasonably found counsel's failure to object was not prejudicial. The report reflects Petitioner had "significant sexual interests" in "Female Adult" and "Female 14–17" categories. Doc. 14, Ex. 11, at 20. While this evidence could rebut the State's case—the victim was a male under the age of thirteen—other portions of the report were problematic to Petitioner. For example, the report noted a "highly problematic" social desirability score, which "may indicate the person's inability to respond truthfully to others." *Id.* at 21. And the report indicated Petitioner reported an

45

addiction to pornography. *Id.* at 24. Given the report was not entirely favorable to Petitioner, and in consideration of the evidence as a whole, the OCCA's determination was reasonable.

In his reply, Petitioner contends the "counsel's performance fell below professional norms" because he was "[c]learly . . . not familiar with admission of testimonial hearsay or hearsay implications." Doc. 19, at 22-23. He argues "[t]here is no sound trial strategy to omit evidence that could create reasonable doubt in the minds of the jury." *Id.* at 23. Petitioner's focus on the reasonableness of his counsel's performance ignores the other prong—whether the alleged ineffective conduct was prejudicial. Here, the OCCA held the failure to present the psychosexual evaluation was not prejudicial. Doc. 14, Ex. 8, at 21-22. As noted above, that determination was reasonable. Because Petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance," *Smith v. Robbins*, 528 U.S. 259, 288 (2000), the Court need not make a determination on this issue.

### 2.    Counsel's failure to impeach G.L. with his recorded statements to Mr. Tanio.

Petitioner contends his trial counsel failed to use G.L.'s recorded statements as impeachment evidence. Doc. 1, at 6. Among the "many inconsistencies" noted by Petitioner, he specifically addresses only that G.L. alleged in the statements that he was tied up and was cut free in a rush, while

"the evidence presented showed no signs of being cut." *Id.* Petitioner contends the inconsistencies "[were] not insignificant" and should have been heard by the jury because they "would have conclusively established that G.L. was not being truthful." Doc. 19, at 25.

The OCCA reasonably determined that trial counsel's decision not to use G.L.'s recorded interviews for impeachment purposes was within the wide range of reasonable professional assistance.[18] Although G.L. testified he was tied up during one of the episodes of sexual assault, TR. 195-96, he did not testify about the material used to tie him up or about how he was released from being tied up. Thus, impeaching G.L. with his statement that he was cut free in a rush would have had little persuasive value to the jury. And, as the OCCA correctly determined, Petitioner's counsel cross-examined Mr. Tanio about the robe tie through other means. *See id.* at 345 (asking Mr. Tanio about whether the blue robe tie entered into evidence was consistent with G.L.'s description of being tied with a rope). Because the OCCA's determination was reasonable, habeas relief is not warranted for this alleged point of error.

---

[18]    The OCCA "note[d] that the recorded interviews are not within the record on appeal." Doc. 18, Ex. 8, at 19. Petitioner contends the "interviews should have become part of the record on appeal." Doc. 19, at 24. But the OCCA considered the interviews in its denial of Petitioner's Application for Evidentiary Hearing on Sixth Amendment claim under Rule 3.11(B) of the OCCA. Doc. 14, Ex. 11. The Court considers this a denial on the merits. *See Lott*, 705 F.3d at 1213 (10th Cir. 2013).

### 3.     Counsel's failure to impeach Mr. Tanio with DNA test results.

Petitioner contends his attorney was ineffective because he failed to use an OSBI report during trial. Doc. 1, at 6. G.L. alleged that a sex toy was used on him in Petitioner's bedroom. State's Ex. 4. Petitioner argues that the OSBI tested a pink sex toy and the report showed only female DNA was present. Doc. 1, at 6. He contends his attorney should have impeached G.L.'s testimony with the report. *Id.*

The OCCA held that "[a]s nothing in the record establishes that DNA testing was performed and what, if any, results were obtained, we find that Appellant has neither shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to utilize the alleged evidence." Doc. 14, Ex. 8, at 20.

Respondent concedes the OCCA incorrectly held that the record contained no DNA testing evidence. OR I 31. The OSBI report in the record states that the DNA obtained from the sex toy could be separated into a major and minor component. *Id.* The major component of the DNA profile contained DNA from a female donor, excluding G.L. as a potential donor. *Id.* The minor component contained very limited genetic information and was insufficient for comparison. *Id.* Further, possible hairs or fibers remained on the sex toy that received no analysis. *Id.*

Petitioner argues the OCCA's determination on this issue was an unreasonable determination of the facts and is thus not entitled to AEDPA deference. Doc. 19, at 30-31. Even though the OCCA's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), Petitioner's argument fails under *Strickland*. *See Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015) ("In light of our determination that AEDPA deference does not apply due to our § 2254(d)(2) analysis, we review the state supreme court's voluntariness determination de novo."). There is not a "a reasonable probability that, but for counsel's [failure to utilize the OSBI report as impeachment], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 690, 694.

The trial included little testimony about sex toys. Chief Minson testified that during the execution of a search warrant at Petitioner's home, the officers "discovered a pink sex toy in the master bedroom inside a toy box." TR. 247. Mr. Tanio, the lead investigator on the case, did not testify about the sex toy recovered at the scene. In a statement to his counselor, G.L. described being dragged upstairs to Petitioner's bedroom. State's Ex. 4. G.L. alleges Petitioner used sex toys on G.L.—sticking one "on [his] butt" and another on his penis while Petitioner "went up and down on it with his hand." *Id.* Testifying about the same incident at trial, G.L. stated that Petitioner "started putting his penis

in [G.L.'s] butt." TR. 195. But when asked if he could tell if anything else was put inside him, he responded, "no." *Id.* at 196. G.L. also alleged that, among other acts, Petitioner used a sex toy on G.L.'s penis and "up [his] but[t]" while at the feed lot. State's Ex. 5. But when testifying about this incident, G.L. did not reference the sex toy—he alleged that Petitioner "shoved his penis in my mouth and in my butt" and that Petitioner "made me do the same thing that he did to me to him." TR. 204.

The trial court instructed the jury that to convict Petitioner for sexual abuse of a child, it must find: (1) a person willfully engaged in; (2) rape/incest/(making lewd/indecent acts/proposals); (3) to a child under the age of twelve.[19] OR I 152; TR. 419-20. As instructed, the jury did not have to find Petitioner used a sex toy on G.L. to convict Petitioner of child sexual abuse.

---

[19]     The jury instructions for the other charges—forcible sodomy, lewd acts (molestation) with a child under sixteen, and rape in the first degree—did not have elements applicable to the use of a sex toy. OR I 154, 156, 158. And the charge for child sexual abuse is the only one to reference rape by instrumentation:

> COUNT 1:  CHILD SEXUAL ABUSE ~ a felony, on or before the 23rd day of September, 2014 by knowingly and intentionally looking upon, touching, feeling the body or private parts of G.L., …a minor child in a lewd and lascivious manner by engaging in child sexual abuse, Rape by instrumentation by such child and when G.L. was under the age of 16 years old and the Defendant was at least 3 years older than the victim.

OR I 79.

Instead, it could have convicted him of the charge based on the more prevalent testimony—that Petitioner forcibly sodomized G.L.

The testimony at trial focused on allegations that Petitioner engaged in sexual intercourse and oral sex with G.L. Based on G.L.'s inconsistent testimony regarding whether a sex toy was used on him in Petitioner's bedroom, the somewhat inconclusive nature of the report itself, and the fact that the jury could have convicted Petitioner without any evidence of the sex toy, the Court cannot conclude that the jury would have reached a different result if Petitioner's counsel had used the OSBI report at trial. The Court therefore cannot determine that counsel's performance, if deficient, prejudiced Petitioner. Petitioner is thus not entitled to habeas relief on this ground because he cannot establish his representation at trial was constitutionally insufficient.

### 4. Counsel's failure to impeach G.L. with his brother's statements that G.L. had committed forcible sodomy on him.

Petitioner next argues his attorney was ineffective for failing to impeach G.L. with his brother's statement accusing G.L. of committing forcible sodomy on him. Doc. 1, at 6. The OCCA reasonably determined that defense counsel's decision not to use this statement to impeach was a strategic decision that did not demonstrate unreasonable representation under prevailing professional norms. As the OCCA held, introduction of the statement would have been

additional evidence of G.L.'s behavioral changes after the alleged sexual abuse—a factor probative of Petitioner's guilt. Doc. 14, Ex. 8, at 21 (citing *Salyer v. State*, 761 P.2d 890, 895 (Okla. Crim. App. 1988)). Thus, the Court should deny habeas relief on this alleged error.

### 5. Counsel's failure to object to the lack of a reliability hearing.

Petitioner argues his attorney "failed to object to the lack of a reliability hearing" in his case. Doc. 1, at 7. But, as discussed above, the trial court's failure to hold a reliability hearing, although amounting to an error under state law, did not deprive Petitioner of a fair trial. *See supra* § V.B. The undersigned finds the OCCA reasonably concluded that there was not a reasonable probability that the outcome of the trial would have been different had his attorney objected to the lack of a reliability hearing.[20] So, Petitioner cannot meet *Strickland*'s prejudice element, and he is not entitled to habeas relief.

---

[20]     In his reply brief, Petitioner asserts the OCCA unreasonably made a "presumed finding" that his trial counsel's failure to object might be considered sound trial strategy. Doc. 19, at 22. But the OCCA held only that there was not a reasonable probability the outcome of the trial would have been different if trial counsel had objected to the procedure. Doc. 14, Ex. 8, at 18-19. Because Petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance," *Smith*, 528 U.S. at 288, the Court need not make a determination on this issue.

### 6.   Counsel's failure to object to jury instructions.

Petitioner contends his attorney failed to object to instructional errors in his case. Doc. 1, at 7. On direct appeal, Petitioner contended his trial counsel failed to object to certain jury instructions and the trial court's responses to the jury's questions. Doc. 14, Ex. 5, at 56.

### a.   Petitioner's trial counsel was not ineffective for failing to object to jury instructions.

Petitioner argued on direct appeal that the trial court gave improper jury instructions. *Id.* at 43-49. He asserted the jury instruction on sexual abuse "instructed on more than one underlying offense." *Id.* at 44. Petitioner contended the jury instruction on forcible sodomy did not adhere to the standard instruction and "attempt[ed] to encompass all of the acts described by G.L." *Id.* at 47. He also argued the instruction on lewd acts was improper because it could be interpreted to define "obscene materials" as "materials deemed harmful to minors." *Id.* at 47-48. Citing Oklahoma law, the OCCA held the instructions did not amount to plain error because the trial court properly tailored the instructions to the facts of the case. Doc. 14, Ex. 8, at 15-17.

The OCCA's determination that the jury instructions were not erroneous under Oklahoma law binds this Court. *See Williams v. Trammell*, 782 F.3d 1184, 1195 (10th Cir. 2015) ("'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" (quoting *Bradshaw v. Richey*, 546 U.S.

74, 76 (2005))). Because the jury instructions did not violate Oklahoma law, any objection would not have succeeded, and this Court therefore finds it was not unreasonable for the OCCA to determine that trial counsel was not ineffective for failing to object to the jury instructions.

> **b.    Petitioner's counsel was not ineffective for failing to object to the trial court's responses to the jury's questions.**

Petitioner also argued on direct appeal that the trial court erred in its responses to the jury's questions. Doc. 14, Ex. 5, at 49-52. As discussed above, the OCCA held the trial court's responses to the jury's questions tracked state law. *See supra* § XI.A. And those responses were formulated with defense counsel's input. *See* TR. 452-59, 462-71. Because a challenge by counsel would not have succeeded, the OCCA reasonably found that Petitioner's attorney was not ineffective for failing to object to the trial court's responses to the jury's questions.

## XIII. Ground Nine: allegation of cumulative error at the trial court level.

In Ground Nine, Petitioner contends he is entitled to habeas relief based on cumulative error at the trial court level. Doc. 1, at 7. In a cumulative error analysis, the Court looks only to "federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the

trial that they violated the trial's fundamental fairness."[21] *Littlejohn*, 704 F.3d at 868 (internal quotation marks omitted). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Bush*, 926 F.3d at 686 (internal citations and alterations omitted). It is a petitioner's burden to show "that the errors resulted in actual prejudice." *Id.* (internal quotation marks omitted).

The OCCA determined the trial court committed three harmless errors: (1) the trial court's failure to hold a reliability hearing; (2) the admission of evidence about Petitioner's termination from Wal-Mart; and (3) a violation of the Confrontation Clause. Doc. 14, Ex. 8, at 20-21. But the first two were state-law errors, not constitutional errors. *See supra* §§ V.B., IX.B.3. Because the OCCA found the errors harmless on plain-error review, it effectively held the errors did not amount to constitutional due process violations. *See Hancock*, 798 F.3d at 1011 ("Oklahoma's formulation of the plain-error standard is

---

[21]     "[T]he Supreme Court has never recognized the concept of cumulative error." *Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). And, "because there is no 'clearly established Federal law' on this issue," it is questionable "whether a state appellate court's rejection of a cumulative error argument can justify federal habeas relief under the standards outlined in § 2254(d)." *Id.* That said, the *Bush* court still considered the issue because it was "bound by Tenth Circuit precedent." *Id.*

virtually identical to the constitutional test for due process."). The remaining error—a harmless Confrontation Clause violation—is a constitutional error. But a single error cannot support a claim of cumulative error. *See Lott*, 705 F.3d at 1223 ("[A]s the term 'cumulative' suggests, . . . we undertake a cumulative-error analysis only if there are at least two errors." (internal quotation omitted)). For that reason, Ground Nine should be denied.

## XIV. Ground Ten: allegation of factual innocence.

Ground Ten stems from Petitioner's Application for Post-Conviction Relief. Doc. 1, at 8. Petitioner argues that he "is factually innocent of all crimes of which he is accused through the insufficiency of any physical evidence." *Id.* He contends "all physical evidence presented in [the] trial points towards innocence, and contradicts all accusatory statements made by the allege[d] victim." *Id.*

### A.   The OCCA's decision.

Reviewing Petitioner's appeal of the state district court's denial of his application, the OCCA held:

> To the extent that the claim presented in Proposition Two, the direct challenge to the sufficiency of the evidence, differs from the claims presented on direct appeal, it is not properly raised in post-conviction. Any remaining aspects of the claim are denied for the reasons addressed in Proposition One. Proposition Two is therefore denied.

Doc. 14, Ex. 9, at 4 (citation omitted).

### B.  To the extent Petitioner raises a more general sufficiency-of-the-evidence claim than he did in Ground Three, the OCCA reasonably determined it would not succeed.

Respondent argues that Petitioner's claims are procedurally barred. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). The OCCA's waiver rule is based on Oklahoma state law and is "considered 'independent' for purposes of federal habeas review." *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014). Except for claims involving ineffective assistance of counsel, the Tenth Circuit has "repeatedly held that Oklahoma's [waiver rule] meets the adequacy requirement." *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012). Thus, the OCCA's holding that Petitioner had waived review of his claims was based on an independent and adequate state procedural rule.

Generally, a federal habeas court does not review procedurally barred claims without the petitioner having first shown either (a) cause for and prejudice resulting from the failure to raise the claim on direct review or (b) that a fundamental miscarriage of justice would result if the Court refused to review a claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner's filings lack any allegations that would satisfy either provision. The Tenth Circuit has held, however, that "in the interest of efficiency," a court "'can avoid

deciding procedural bar questions where claims can readily be dismissed on the merits.'" *Brown v. Sirmons*, 515 F.3d 1072, 1092-93 (10th Cir. 2008) (quoting *Snow v. Sirmons*, 474 F.3d 693, 717 (10th Cir. 2007)). This exception applies here.[22]

Referring to its analysis on the ineffective assistance of appellate counsel claim, the OCCA determined that "Petitioner has failed to show that a more generic, or robust, challenge to the sufficiency of the evidence would have been successful." Doc. 14, Ex. 9, at 3. In other words, a broader insufficiency of the evidence claim would not succeed. This determination was reasonable.[23]

For the reasons stated above, the Court should deny habeas corpus relief on Ground Ten.

## XV. Ground Eleven: Petitioner alleges his appellate counsel was constitutionally ineffective.

In Ground Eleven, Petitioner asserts he was denied the effective assistance of appellate counsel. Doc. 1, at 8. He argues that his appellate counsel "was not open to file" a claim of "actual innocence through insufficiency

---

[22]    Because the claim can be denied on the merits, the Court does not address Petitioner's arguments on reply that a fundamental miscarriage of justice would result from the Court's failure to review the claim and that Petitioner was entitled to a liberal construction of his claim by the OCCA because he also alleged ineffective assistance of appellate counsel. Doc. 19, at 32-33.

[23]    The undersigned's review of the OCCA's *Jackson* analysis in Ground Three encompassed the entire record and equally applies here.

of all physical evidence presented at trial," and so the OCCA did not address it on direct appeal. *Id.*

### A.   The OCCA's decision.

Reviewing Petitioner's claim on appeal from the state district court's denial of post-conviction relief, the OCCA held:

> [P]ost-conviction claims of ineffective assistance of appellate counsel are appropriate and are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland*. Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. []466 U.S. at 689-89. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*[], 562 U.S. [at 104] (quoting *Strickland*, 466 U.S. at 689).

> As noted by the district court, the essence of the claims presented in the application were previously raised on direct appeal as challenges to the evidence presented by the State at trial. To the extent that the sufficiency of the evidence was challenged on direct appeal, the claim is not cognizable on post-conviction. We also agree with the district court that Petitioner has failed to show that a more generic, or robust, challenge to the sufficiency of the evidence would have been successful. He has, therefore, failed to demonstrate prejudice as required by *Strickland*. Proposition One is denied.

Doc. 14, Ex. 9, at 2-3 (select citations omitted).

**B.     Clearly established law.**

To succeed on his claim, Petitioner must show his appellate counsel's performance was both deficient and prejudicial. *See Strickland*, 466 U.S. at 690-91. If a claim omitted on direct appeal lacks merit, then counsel's failure to raise it does not amount to constitutionally ineffective assistance under *Strickland*. *See Cargle v. Mullin*, 317 F.3d 1196, 1202-03 (10th Cir. 2003) ("[I]f the issue is meritless, its omission will not constitute deficient performance.").

**C.     The OCCA reasonably determined that Petitioner's appellate counsel was not constitutionally ineffective.**

The OCCA's determination that Petitioner's appellate counsel was not ineffective was reasonable.[24] First, the OCCA correctly noted that Petitioner brought a sufficiency of the evidence claim on direct appeal. *See supra* § VII.A. To that extent, Petitioner's appellate counsel properly raised the issue and cannot be deficient for failing to raise it. The undersigned also agrees with the OCCA's determination that "Petitioner has failed to show that a more generic, or robust, challenge to the sufficiency of the evidence would have been

---

[24]     Petitioner argues the OCCA did not address the issue on the merits, contending "there is no reasoned opinion regarding an ineffective assistance of Appellate Counsel claim." Doc. 19, at 34. The Court disagrees—the OCCA determined that if Petitioner desired to make a more general sufficiency of the evidence claim than already raised in his direct appeal, he failed to show prejudice. Doc. 14, Ex. 9, at 2-3. The OCCA therefore addressed the substance of the second *Strickland* prong by finding no prejudice from the omission of that more general claim.

successful," and that "[h]e has, therefore, failed to demonstrate prejudice as required by *Strickland*."[25] Doc. 14, Ex. 9, at 3. In any case, the undersigned's review of the OCCA's *Jackson* analysis above, *see supra* § VII.C., encompassed the entire record and equally applies to determine appellate counsel was not deficient for failing to raise a more robust sufficiency of the evidence claim. *See Cargle*, 317 F.3d at 1202 ("[I]f the issue is meritless, its omission will not constitute deficient performance."). The Court should deny Petitioner's request for habeas relief in Ground Eleven.

## XVI. The Court should not consider Petitioner's subject-matter-jurisdiction argument raised for the first time in his reply.

In his reply, Petitioner advances a new argument that the state lacked subject-matter jurisdiction because the United States never ceded the lands within Alfalfa County to the State of Oklahoma. Doc. 19, at 35-52. The Court should not consider this argument—which does not appear to have been exhausted in state court—because it was not made in the Petition. *See Eaton*, 931 F.3d at 1025, n.15 ("[The Petitioner] attempts to make a new-claim

---

[25]     Petitioner contends the OCCA failed to employ *Strickland*'s "reasonable probability" standard when determining the alleged error was not prejudicial. Under the AEDPA's deferential framework, this Court "presum[es] that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And the Tenth Circuit has determined that the OCCA properly applied the *Strickland* prejudice standard even when it engaged in the "occasional use of shorthand." *Wood v. Carpenter*, 907 F.3d 1279, 1301 (10th Cir. 2018) (internal quotation omitted). That logic applies equally here, so the Court does not find that the OCCA failed to properly apply *Strickland*.

argument for the first time in his reply brief. But arguments advanced for the first time in a reply brief are waived.").

## XVII. Recommended ruling and notice of right to object.

For the reasons discussed above, the undersigned recommends the Court deny the petition for habeas relief.

The undersigned advises the parties of their right to object to this report and recommendation by June 21, 2021, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 7th day of June, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE